IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE GRIFFITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-01206-DWD |
| | ) |
| U.S. COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision by the Defendant denying Plaintiff's applications for Disability Insurance Benefits ("DIBs") and Supplemental Security Income ("SSI"). For the reasons explained below, the Court **AFFIRMS** the final agency decision of Defendant. The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiff.

### Procedural History

On February 16, 2021, Plaintiff filed her application for DIBs and SSI. (Doc. 15-5, pgs. 5, 11). Plaintiff alleged a disability onset date of February 6, 2021. (Doc. 15-5, pgs. 5, 11). Plaintiff's alleged disability onset date was later amended to November 7, 2021. (Doc. 15-2, pg. 19). Plaintiff's claim was initially denied on March 16, 2022, and then again on reconsideration on November 2, 2022. (Doc. 15-4, pgs. 13, 20). Following Plaintiff's written request, her claims were the subject of an evidentiary hearing on June 27, 2023. (Doc. 15-2, pg. 37). In a decision dated October 6, 2023, an Administrative Law Judge

("ALJ") found that Plaintiff was not disabled, resulting in a denial of her applications. (Doc. 15-2, pg. 29). On March 4, 2024, the Appeals Council denied Plaintiff's request for review. (Doc. 15-2, pgs. 2–4). Therefore, the ALJ's decision is final for purposes of the Court's review. Plaintiff exhausted her administrative remedies and timely filed a Complaint (Doc. 1).

## Applicable Legal Standards

To qualify for DIBs or SSI, a claimant must be disabled. A disability is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that, *inter alia*, has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing medical evidence to support the claims of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under disability unless he furnishes such medical and other evidence of the existence thereof."). While a claimant's statements of pain or other symptoms are considered, those statements alone are not conclusive evidence of a disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529.

To assess an alleged disability, the ALJ employs a "five-step sequential evaluation process." *See* 20 C.F.R. §§ 404.1520 (a)(1), (2), (4); 416.920(a)(1), (4). The ALJ asks the following questions: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment that meets certain duration requirements or a combination of impairments that is severe and meets the duration requirements; (3) whether the claimant has an

impairment that meets or equals one of the impairments listed in the regulations and satisfies the duration requirements; (4) whether, in view of the claimant's residual functional capacity ("RFC") and past relevant work, he or she can perform past relevant work; and (5) whether, in view of the claimant's RFC, age, education, and work experience, he or she can adjust to other work. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the claimant is doing substantial gainful activity under step 1, does not have an impairment or combination of impairments as described at step 2, can perform past relevant work under step 4, or can adjust to other work under step 5, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i),(ii), (iv), (v); 416.920(a)(4)(i), (ii), (iv), (v). If the claimant has an impairment that meets the requirements of step 3 or is incapable of adjusting to other work under step 5, then he or she is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),(v); 416.920(a)(4)(iii), (v). The claimant has the burden of proof at steps 1-4. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022).

A severe impairment under step 2 is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c); *see also Barnhart v. Thomas*, 540 U.S. 20, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003). Impairments which are expected to result in death, or those which have lasted or are expected to last for a continuous period of at least twelve months, qualify as severe under the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1509; 416.920(a)(4)(ii); 416.909. "[T]he step two determination of severity is 'merely a threshold requirement'" to "proceed to the remaining steps of the evaluation process."

*Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010). Once an ALJ makes a finding that one or more of a claimant's ailments are severe, he must "consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (citing 20 C.F.R. § 404.1523; and then collecting cases).

Impairments and related symptoms may cause physical and mental limitations that affect what may be done in a work setting. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC at issue in step 4 assesses the most that a claimant can do in a work setting, notwithstanding those limitations. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1); *accord* SSR 96-8p, 1996 WL 374184, *2; *Clifford v. Apfel*, 227 F.3d 863, 872-73 n.7 (7th Cir. 2000). In this way, an RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, for eight hours a day and five days a week or an equivalent work schedule. *See Tenhove v. Colvin*, 97 F. Supp. 2d 557, 568 (E.D. Wisc. 2013); SSR 96-8p, 1996 WL 374184, *2; *accord Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). An RFC must be based on all of the relevant medical and other evidence contained in the record. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); SSR 96-8p, 1996 WL 374184, *2-3, 5.

When completing an RFC, the ALJ must identify the claimant's functional limitations and assess his or her work-related abilities on a function-by-function basis. *See Tenhove*, 97 F. Supp. 2d at 569; SSR 96-8p, 1996 WL 374184, *1, 3; *accord Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 (E.D. Wisc. 2004). The ALJ considers all impairments, including those that are not severe, and the claimant's ability to meet physical, mental,

4

sensory, and other requirements of work. *See* 20 C.F.R. §§ 404.1545(a)(2), (4); 416.945(a)(2), (4); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) ("[T]he ALJ must consider the combined effect of all impairments, 'even those that would not be considered severe in isolation.'"). "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). And, importantly, while a claimant's statements of pain or other symptoms are considered, they alone are not conclusive evidence of a disability. *See* 20 C.F.R. § 404.1529.

As to physical abilities, the ALJ assesses the nature and extent of any physical limitations, then determines the RFC for work activity on a regular and continuing basis. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b). A limited ability to perform physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, or crouching may reduce the ability to do past work. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b); *see also* SSR 96-8p, 1996 WL 374184, *5-6. Other impairments affecting work abilities include, among other things, impairments imposing environmental restrictions. *See* 20 C.F.R. §§ 404.1545(d); 416.945(d). If the symptoms, signs, or laboratory findings for a severe impairment do not meet or equal those of a listed impairment, the ALJ considers the total limiting effects of all impairments, including medical and nonmedical evidence. 20 C.F.R. §§ 404.1545(e); 416.945(e).

After the identification of the claimant's functional limitations and the assessment of his or her work abilities on a function-by-function basis, the RFC may be expressed by exertional category, including "light." *See Tenhove*, 97 F. Supp. 2d at 569; *accord Lechner*,

5

321 F. Supp. 2d at 1036; SSR 96-8p, 1996 WL 374184, *3. To do a full range of work in an exertional category, such as "light," the individual must be able to perform substantially all of the functions required at that level. *See* SSR 96-8p, 1996 WL 374184, *5-6. Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b). Even the weight lifted in a job is very little, a job is considered light work if it requires a good deal of walking or sitting, or sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b). In the absence of additional limiting factors like "loss of fine dexterity or inability to sit for long periods of time," a person considered capable of performing light work is also considered capable of performing sedentary work. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b).

## **The ALJ's Decision**

The ALJ assessed Plaintiff's alleged disability under the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520 (a)(1), (2), (4). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged disability onset date, November 7, 2021. (Doc. 15-2, pg. 19). At step two, the ALJ found Plaintiff suffered from severe impairments, *i.e.*, fibromyalgia, degenerative disc disease, hypertension, obstructive sleep apnea, obesity, bipolar disorder, generalized anxiety order, and posttraumatic stress disorder. (Doc. 15-2, pg. 19). The ALJ also found that the following impairments for which Plaintiff claimed disability were not severe: diabetes mellitus, diverticulosis, internal hemorrhoids, gastritis, trigger fingers status post injections, a renal cyst, vertigo, right shoulder tendinosis, mild osteoarthritis, and

6

dyslipidemia. (Doc. 15-2, pgs. 19–20). The ALJ acknowledged that the record noted diagnoses of these impairments, but that none caused "more than a minimal limitation of physical or mental ability to do basic work activities." (Doc. 15-2, pg. 20). With respect to Plaintiff's diabetes mellitus, the ALJ explained that the record noted that she used an insulin pump, her A1c was at goal and neuropathy screenings were negative. (Doc. 15-2, pg. 19). The ALJ stressed that she considered all of Plaintiff's medically determinable impairments, including any that were non-severe, when assessing Plaintiff's RFC. (Doc. 13-2, pg. 20).

At step 3, the ALJ found Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of the impairments listed in the regulations. (Doc. 15-2, pg. 20). When doing so, the ALJ emphasized that she considered Plaintiff's impairments both individually and in combination. (Doc. 15-2, pgs. 20–22). Specifically, the ALJ determined that Plaintiff's diagnosis of fibromyalgia did not equal a listing because no evidence indicated that Plaintiff "either requires an ambulatory aide that requires use of both upper extremities or cannot perform fine and gross movements with at least one upper extremity due to a combination of extremity-related limitations and the use of a medically necessary mobility device." (Doc. 15-2, pgs. 20–21). In support of her determination, the ALJ highlighted the record noting that Plaintiff had a normal gait, without the need for an assistive device. (Doc. 15-2, pg. 21). The ALJ further found that Plaintiff's diagnoses of hypertension, obstructive sleep apnea and obesity did not reach listing level alone or in combination with another impairment. (Doc. 15-2, pg. 21). The ALJ determined that Plaintiff's mental impairments did not "cause at least two 'marked'

7

limitations or one 'extreme' limitation." (Doc. 15-2, pg. 22). As such, the "paragraph B" criteria was not satisfied. (Doc. 15-2, pg. 22). Finally, because the record did not establish that Plaintiff had only "a minimal capacity to adapt to changes in the [Plaintiff's] environment or to demands that are not already part of the [Plaintiff's] daily life," the ALJ concluded that the "paragraph C" criteria was not satisfied either.

Before proceeding to step 4, the ALJ found Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b) except: She could occasionally climb ramps and stairs. She should avoid climbing ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, or crawl. She should avoid extreme cold, extreme vibration, and exposure to concentrated fumes, odors, dusts, gases, and poor ventilation. She should avoid hazards such as unprotected heights and dangerous machinery. She is able to complete simple, routine tasks with minimal changes in job duties and setting. She should avoid fast-paced production work, for example avoid hourly quotas. She can occasionally interact with the general public, coworkers, and supervisors.

(Doc. 15-2, pg. 23).

The ALJ found Plaintiff's medically determinable impairments could reasonably have been expected to cause the alleged symptoms, but that Plaintiff's statements on the symptoms' intensity, persistence and limiting effects were "not entirely consistent" with the evidence. (Doc. 15-2, pg. 24). First, the ALJ recounted Plaintiff's diagnoses and statements from her Adult Disability Report and function reports that she could not lift or carry over 10 pounds or stand more than fifteen minutes at a time, and she would need to lie down during an eight-hour workday. (Doc. 15-2, pg. 23). Plaintiff alleged difficulties with sitting, walking, bending, reaching, kneeling and climbing stairs, as well as daily

8

back pain. (Doc. 15-2, pg. 23). As for mental impairments, Plaintiff alleged that she had depression and mania on any given day and sometimes had suicidal thoughts. She also stated that she had problems with memory, task completion, concentration, understanding and following instructions, but that she could drive, go out alone, shop in stores, cook and care for herself, and perform some housework, such as laundry and dishes. (Doc. 15-2, pg. 24).

    Next, the ALJ summarized Plaintiff's treatment related to her impairments. Between February 2022 and May 2022 Plaintiff sought medical examination complaining of fibromyalgia, chronic pain and hypertension. However, it was noted on multiple occasions that Plaintiff was ambulating normally, and her hypertension was controlled while on her medications. The ALJ found this evidence to be inconsistent with Plaintiff's alleged severity of pain or limitations with sitting, standing, walking, lifting, or carrying. (Doc. 15-2, pg. 24). The ALJ then noted that between June 2022 and August 2022 Plaintiff made multiple emergency room visits regarding pain radiating down both her lower extremities, and ultimately underwent a lumbar laminectomy, partial facetectomy, and discectomy. The ALJ found that the evidence of these procedures supported the lifting and carrying limitations of a light exertional level, with postural and environmental limitations. (Doc. 15-2, pgs. 24–25). Regarding Plaintiff's mental impairments, the ALJ described the findings of examinations of Plaintiff as "relatively normal or mild" and not consistent with the alleged severity of symptoms and limitations. Nonetheless, the ALJ ultimately included mental limitations in the RFC based significantly on Plaintiff's subjective allegations. (Doc. 15-2, pg. 25). Finally, the ALJ considered the medical

opinions and prior administrative medical findings without deference to those opinions or findings or giving them any specific evidentiary weight. (Doc. 15-2, pgs. 25–26). Based on this evidence, the ALJ found Plaintiff had the RFC provided above. (Doc. 15-2, pg. 23).

At step 4, the ALJ found Plaintiff was unable to perform any past relevant work. (Doc. 15-2, pg. 27). The ALJ noted that the vocational expert testified Plaintiff had past relevant work as a medical receptionist and food service manager, and that such work would exceed Plaintiff's RFC.

Finally, at step 5, the ALJ found, in addition to Plaintiff's past relevant work and in consideration of her age, education, work experience, and RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy. (Doc. 15-2, pgs. 27–28). In doing so, the ALJ noted Plaintiff, at 50-years-old, was closely approaching advanced age. (Doc. 15-2, pgs. 27–28). Plaintiff also has at least a high school education. (Doc. 15-2, pgs. 27–28). The ALJ's finding for this step was based on testimony from the vocational expert stating that Plaintiff could perform the requirements of occupations such as cleaner, hand packer, and production worker. (Doc. 15-2, pg. 28). As such, the ALJ determined that Plaintiff was "not disabled" from November 7, 2021, through the date of the decision. (Doc. 15-2, pgs. 28–29). As a result, Defendant denied Plaintiff's application for DIBS and SSI. (Doc. 15-2, pg. 29).

## Analysis[1]

The Court's review of the ALJ's decision is "extremely limited" and "very deferential." *See* 42 U.S.C. § 405(g); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Findings of fact, supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g); *accord Clifford*, 227 F.3d at 869. The Court will reverse the ALJ's decision only if the findings of fact were not supported by substantial evidence or the ALJ applied the wrong legal standard. *See Clifford*, 227 F.3d at 869; *accord Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). In this context, "substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Clifford*, 227 F.3d at 869 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Jarnutowski*, 48 F.4th at 773. If reasonable minds could differ about whether a claimant is disabled and the ALJ's decision is supported by substantial evidence, then the Court will affirm the denial of claims. *Jarnutowski*, 48 F.4th at 773 (quoting *Elder*, 529 F.3d at 413). When assessing the evidence, the Court reviews the entire record, but does not reweigh the evidence, resolve conflicts, decide credibility questions, or substitute its judgment for that of the ALJ. *See Clifford*, 227 F.3d at 869; *accord Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ is not required to address every piece of evidence or testimony presented, but he must build a 'logical bridge' between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *see also Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("The ALJ's summary does not

---

[1] The portions of the evidentiary record relevant to Plaintiff's arguments and the Court's resolution of the case are incorporated into the analysis below.

11

mention every detail. But it need not."). An ALJ is not permitted to "cherry pick evidence from the record" to support a conclusion without engaging with evidence weighing against it. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). The Court will not decline to engage in a critical review to act as a rubber stamp. *See Clifford*, 227 F.3d at 869.

Plaintiff presents a single argument against the ALJ's decision. Plaintiff argues that the ALJ "provided an objectively flawed analysis of Ms. Griffith's diabetes and neuropathy." (Doc. 17, pg. 5–7). In support of her argument, Plaintiff points to two visits with her treating podiatrist and states that the ALJ "completely fails to mention the diagnosis of diabetic neuropathy from a treating podiatrist." (Doc. 17, pgs. 6–7). Plaintiff claims that the ALJ's assessment of Plaintiff's foot health is "objectively erroneous" because she fails to explain her finding that Plaintiff's foot-related diagnoses are "mild." (Doc. 17, pg. 7).

As noted above, the ALJ addressed Plaintiff's diabetes diagnosis when determining which of her medically determinable impairments were severe. (Doc. 15-2, pg. 19). The ALJ noted that Plaintiff's medical records indicated that Plaintiff's diagnosis was managed with an insulin pump and her hemoglobin A1c level was at goal. (Doc. 15-2, pg. 19). The ALJ further stated that Plaintiff was without diabetes-related complications generally, had negative screenings for neuropathy and only recently had issues with foot ulcers that were noted as mild after examination. (Doc. 15-2, pg. 19).

The existence of a diagnosis or condition does not require an ALJ to find that a claimant suffers from a disabling impairment; the inquiry is focused on the claimant's ability to work. *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007); *see also* 20 C.F.R.

§ 404.1529. The record cited in the ALJ's decision provides ample evidence supporting the classification of Plaintiff's diabetes-related foot issues as "mild." It was not, as Plaintiff suggests, "objectively erroneous." (Doc. 17, pg. 7); *see Elder*, 529 F.3d at 413-14 ("[O]nly when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong.'") (internal quotations omitted).

Plaintiff was examined by her endocrinologist in January and April of 2022. Records from both visits note that Plaintiff was not experiencing neuropathy, and that control of her diagnosis was "excellent." (Doc. 15-12, pgs. 311, 318, 325, 332). Plaintiff also saw her primary care provider in April of 2022. Notes from that examination indicate that Plaintiff's hemoglobin A1c level was at goal, she was ambulating normally, and a foot exam completed in the last 12 months was negative. (Doc. 15-12, pg. 204). Plaintiff takes issue with the ALJ's statement that "[n]europathy screenings were negative," claiming that the ALJ confused it with the section of the record indicating that a *nephropathy* screening was negative. (Doc. 17, pg. 6). But even if the ALJ confused neuropathy and nephropathy in the decision, the same record clearly indicates that Plaintiff had a foot exam with negative results sometime in the preceding 12 months. (Doc. 15-12, pg. 204).

The ALJ also cited and considered records from Plaintiff's visits with her treating podiatrist in September and October of 2022. (Doc. 15-2, pg. 19 (citing Exhibit 44F, docketed in this case as Doc. 15-14, pgs. 538–565)). Records from both visits are inconsistent in that it states that Plaintiff "denies foot pain, numbness, tingling," but also reports "tingling and numbness in toes and feet." (Doc. 15-14, pgs. 538, 544, 546, 551). While Plaintiff's podiatrist lists diabetic peripheral neuropathy in his assessment, the

13

notes indicate that conservative treatments were emphasized and that he discussed shoe and orthotic recommendations with Plaintiff that can prevent worsening of her condition. (Doc. 15-14, pgs. 545, 552). The ALJ's classification of Plaintiff's foot issues as mild is further supported by another examination shortly after her October podiatrist appointment, where records indicate that Plaintiff was ambulating normally. (Doc. 15-14, pg. 342). As such, the record provides substantial evidence in support of the ALJ's assessment. Therefore, the Court cannot say that the ALJ erred in finding Plaintiff's diabetes and neuropathy non-severe at step 2 of the analysis.

## Conclusion

For these reasons, the Court **AFFIRMS** the final agency decision of Defendant. The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiff.

**SO ORDERED.**

Dated: August 21, 2025

_____
DAVID W. DUGAN
United States District Judge